**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| JEWAN BROWN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:05-CV-25 PS |
| | ) | |
| CECIL DAVIS, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

*Pro se* Petitioner Jewan Brown, an inmate at the Indiana State Prison, was found guilty by a Conduct Adjustment Board (CAB) of receiving money from a correctional officer (the charge was officially called "trafficking") and was sanctioned as a result. The CAB is an administrative body that adjudicates violations of prison rules and regulations. After exhausting his administrative remedies, Brown petitioned for relief under 28 U.S.C. § 2254. The Response filed on behalf of Respondent by the Attorney General of Indiana demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). The Attorney General of Indiana has submitted the administrative record, including documents designated A through G, which sets out the proceedings before the CAB.

**I. RELEVANT FACTS**

Petitioner Jewan Brown's mail was being reviewed as part of an ongoing investigation by the Department of Corrections. (Ex. A.) On July 6, 2004, while reviewing Brown's mail in his cell, the investigating officer, C. Whelan, found letters from a post office box in Gary, Indiana that was registered to Correctional Counselor Latasha Jones. (*Id.*) When interviewed on July 7,

2004, Officer Jones admitted that she wrote the letters. (*Id.*) She also admitted to obtaining the post office box and to corresponding with Brown. (*Id.*) One of the letters from Jones directed Brown "to keep the $22.00 [ ] for stamps." (*Id.*) After being confronted with what was found in Brown's cell, Officer Jones chose to resign from her position as a correctional officer. For his part, Brown denied knowing Officer Jones or receiving any money from her. (*Id.*) Brown was charged with trafficking, a Class A offense. (*Id.*)

On July 13, 2004, Brown was notified of the charges against him. (Ex. B.) At the screening, Brown requested a lay advocate and the confiscated letters as physical evidence. (*Id.*) He did not request any witnesses. (*Id.*)

The CAB hearing was held on July 19, 2004. (Ex. C.) At the hearing, Brown again denied knowing Jones or receiving the money. (*Id.*) The CAB found Brown guilty of trafficking. (*Id.*) The CAB based its finding of guilt on staff reports, Brown's statement, evidence from witnesses (including Officer Jones), and the investigation case file that contained the confiscated letters. (*Id.*) The sanction imposed was a 360 day earned credit time loss, one year disciplinary segregation, and demotion from Credit Class One to Credit Class Two.

On appeal, the facility head upheld the finding of guilt and the sanctions based upon his review of the correspondence in the investigator's case file. (Ex. D.) The final reviewing authority modified the offense to "Conspiring with Another," another Class A offense, because Brown "did not bring the money or letters into the facility[.]" (Ex. F.) Nevertheless, the reviewing authority left the sanctions intact. (*Id.*)

## II. STANDARD OF REVIEW

As the loss of good time credit is a "liberty" interest protected by the Fourteenth

Amendment to the Constitution, it triggers the applicability of *Wolff v. McDonnell*, 418 U.S. 539 (1974), and requires certain procedural steps as stated in that Supreme Court decision. Due process requires that Brown be given: "(1) advance written notice of the charges against [him] at least twenty-four hours before the hearing; (2) the opportunity to call witnesses and present documentary evidence in [his] defense when consistent with institutional safety and correctional goals; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994), citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) and *Wolff v. McDonnell*, 418 U.S. 539, 564, 566 (1974). For the hearing to be meaningful, the prisoner "should be afforded the opportunity to be heard before an impartial decision maker." *Id.*

The decision must be supported by "some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). The so-called "some evidence" standard has been repeatedly applied in this circuit. *See Webb v. Anderson*, 224 F.3d 649, 650-51 (7th Cir. 2000), *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999), and *Meeks v. McBride,* 81 F.3d 717, 719-20 (7th Cir. 1996). "This is a lenient standard, requiring no more than 'a modicum of evidence.'" *Webb*, 224 F.3d at 652 (citations omitted). Even evidence that can be characterized as meager is sufficient to support the revocation of good-time credits "so long as 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Id.* (citing *Hill*, 472 U.S. at 457). "'[T]he relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board.'" *Id.* (emphasis and alteration in original) (citing *Hill*, 472 U.S. at 455–56).

## III. DISCUSSION

Brown claims that the State violated his constitutional rights in four ways: (1) he was not provided with the statements he requested; (2) there was insufficient evidence to find him guilty; (3) the sanctions were overly harsh; and (4) the Final Reviewing Authority incorrectly modified the conviction.

### A. *Denial of Evidence*

In his traverse, Brown raises two issues regarding his denial of evidence claim. First, Brown claims that he was unable to defend himself because the letters were not provided to him at the CAB hearing. (*See* Pet.'s Traverse at 2.) According to the Notice of Disciplinary Hearing (Ex. B), Brown requested the letters as physical evidence. However, when he arrived at the hearing, his request for a continuance, so that the letters could be produced, was denied. (Pet.'s Traverse at 1; Ex. B.) Second, he seems to allege that the CAB failed to review the letters when making its decision. (*See* Pet.'s Traverse at 2-3.)

In *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003), the court stated that the rule of *Brady v. Maryland*, 373 U.S. 83 (1963), "requiring the disclosure of material exculpatory evidence, applies to prison disciplinary proceedings." There are two functions of *Brady* in the prison disciplinary context. The first is to ensure that the disciplinary board considers all relevant evidence. *Id.* The second is to enable the prisoner to present his best defense. *Id.*

Brown was given notice of the charges against him, and had been in possession of the letters before they were confiscated. He therefore presented his defense that he never received any money and that the letters were not from Jones. Accordingly, Brown was able to make his best defense argument to the CAB despite not having seen the letters at the hearing.

4

Alternatively, Brown did not suffer any harm, such as an inability to otherwise present an effective defense, resulting from the denial of access to the letters. The record reveals that Brown presented his best defense through his testimony. The CAB's failure to provide Brown with copies of the letters was therefore harmless error. *See Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) ("But even if [the CAB providing no reason for refusing petitioner's request for witness] was error, [petitioner] has not established that he was prejudiced."), citing *Powell v. Coughlin*, 953 F.2d 744, 750 (2nd Cir. 1991) (harmless error analysis applies to prison disciplinary proceedings).

Brown is mistaken in his contention that the CAB did not review the letters at issue. The CAB specifically noted that the letters were part of the investigator's case file, which they reviewed. (Ex. C.) Accordingly, the CAB considered all relevant evidence, including the letters, in reaching its decision. Brown's first claim therefore is denied.

## B. *Sufficiency of the Evidence*

Brown alleges that there was insufficient evidence to find him guilty of trafficking. Brown argues that his "rights were violated when the CAB relied upon evidence that was never produced or documented [and] when the[y] relied upon the 'so-called' statement of this staff person [Jones]." (Pet.'s Traverse at 3.) The Report of Disciplinary Hearing explicitly states that the CAB relied on several pieces of evidence, including staff reports, Brown's statement, evidence from witnesses, and the investigator's case file. (Ex. C.)

As noted, the amount of evidence needed in these types of cases is very modest. In this case, the presented evidence easily meets the "some evidence" standard. The Report of the Investigation of Incident explains that Brown was in possession of letters that established he was

5

involved in trafficking with a correctional staff person and that the staff person admitted to corresponding with Brown. (Ex. A.) The Report of Disciplinary Hearing also contains the reason for the decision: "The letters that the offender requested are in the investigator's case file . . . Based on the evidence contained in the investigator's case file we find the offender guilty." (Ex. C.) Thus, the CAB had sufficient evidence to find Brown guilty of trafficking. On appeal, the final reviewing authority modified the offense to "conspiring with another," another Class A offense, which also meets the "some evidence" standard.

Brown argues that the statement of the correctional staff person should not have been used by the CAB because it violates Department of Corrections' (DOC) policy. (*See* Pet's Traverse at 3.) This allegation is not a claim that the U.S. Constitution or federal laws were violated. Relief in a habeas action is only available from violations of the federal Constitution or laws. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Violations of Indiana DOC policy do not state a claim for federal habeas relief and must be denied. *See Hester v. McBride*, 966 F. Supp. 765, 774-75 (N.D. Ind. 1997). In any event, even without the staff person's statement, simply the letters obtained from Brown's cell is sufficient to meet the "some evidence" standard that he was trafficking. Consequently, Brown's claim that his finding of guilt was based on insufficient evidence is denied.

C.    *Harshness of the Sanctions*

Brown's third claim alleges that the sanctions imposed were too harsh in light of the fact that he had not received any class A or B conduct violations in the past. (*See* Pet.'s Traverse at 4.) However, according to the institutional guidelines, the sanctions imposed were within the prescribed guidelines Brown could have received for a class A violation. (*See* Ex. G.) Thus,

6

according to DOC policy, the sanctions were not unduly harsh. To the extent that he is challenging those state-imposed guidelines, his claim fails. As stated above, relief in this action is only available for violations of the federal Constitution or laws. *See Estelle*, 502 U.S. at 67-68. State law questions under Indiana Department of Corrections policy do not state a claim for federal habeas relief and must be denied. *See Hester*, 966 F. Supp. at 774-75. Accordingly, Brown's third claim is denied.

### D.     *Conflict in the Charge*

On appeal, the Final Reviewing Authority modified Brown's charge from "trafficking" to "conspiracy to trafficking with staff" because Brown did not bring the money or letters into the facility. (Ex. F.) Brown argues that he was never charged with conspiracy, that he was never screened on that charge, and that he never had a chance to defend himself against that charge. (*See* Pet.'s Traverse at 4.) However, the Final Reviewing Authority based the modification upon the same evidence reviewed at the CAB hearing to better describe the actual offense. Thus, Brown's due process rights were not violated by the modification. *See Northern v. Hanks*, 326 F.3d 909, 911 (7th Cir. 2003) (per curiam) ("Because the factual basis of the investigation report gave [petitioner] all the information he needed to defend against the trafficking charge [when the original charges were conspiracy and bribery], the reviewing authority's modification did not deprive [petitioner] of his due process rights."). The fourth claim is therefore denied.

## IV. CONCLUSION

For all the reasons stated, and because none of Brown's constitutional rights have been violated, this Petition for relief under 28 U.S.C. §2254 is **DENIED**. Respondent's Appearance and Notice of Substitution of Counsel [Doc. 13] is **DENIED AS MOOT**.

**SO ORDERED.**

ENTERED: July 11, 2006

s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT